United States District Court
District of Massachusetts

|                                |   |                     |
|--------------------------------|---|---------------------|
| Vejdi Celebi,                  | ) |                     |
|                                | ) |                     |
|     Plaintiff, | ) |                 |
|                                | ) |                     |
|     v.     | ) |                     |
|                                | ) | Civil Action No.    |
| Alejandro Mayorkas et al.,     | ) | 23-12797-NMG        |
|                                | ) |                     |
|     Defendants. | ) |                |
|                                | ) |                     |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of allegations of plaintiff Vejdi Celebi ("Celebi" or "plaintiff") that the United States Citizenship and Immigration Services ("USCIS") has failed to schedule an interview for his asylum application within a reasonable timeframe. Defendants Secretary of the Department of Homeland Security Alejandro Mayorkas ("Mayorkas"), Director of USCIS Ur Mendoza Jaddou ("Jaddou") and Director of USCIS Boston Asylum Office Meghann Boyle ("Boyle" and collectively, "defendants") are sued in their official capacities.

Plaintiff seeks declaratory and injunctive relief including an order to schedule an interview for plaintiff and a declaration that the so-called "last-in-first-out" policy for reviewing asylum application is arbitrary and capricious. Pending before the Court is defendants' motion to dismiss

1

(Docket No. 10).  For the reasons that follow, the motion will be allowed.

## I. Background

This case concerns the federal government's system for processing asylum applications under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., and related regulations.  Noncitizens are generally, with some exceptions, able to apply for asylum status. See 8 U.S.C. § 1158(a)(1).  As relevant here, asylum applications can be filed with USCIS through the I-589 form subject to regulations under 8 C.F.R. § 208 et seq.

To obtain asylum status, an applicant must demonstrate that he or she is unwilling to return to his or her home country because of

> persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A); see also 8 U.S.C. § 1158(b)(1)(B).

Applications are reviewed by one of eleven regional offices and, according to the complaint, after they are received, applicants provide "biometrics," i.e. photographs and fingerprints for background purposes at a USCIS regional office. Thereafter an applicant is scheduled for an interview.

An initial hearing or interview on the application is supposed to commence within 45 days and final adjudication to be

completed within 180 days of the filing absent "exceptional circumstances." 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii). Generally, while an application is pending, an applicant is permitted to reside in the U.S. and may apply for work authorization. 8 U.S.C. § 1158(d)(2); 8 C.F.R. § 208.7(a).

Those statutory timetables have, however, proven to be aspirational. According to the government, it has utilized a "last in, first out" ("LIFO") system for processing asylum applications since 1995, with the exception of the time period between December, 2014 and January, 2018. Under that system, the newest asylum cases are prioritized purportedly to dissuade meritless applicants from filing applications and taking advantage of removal protection and employment authorization during the pendency of their applications.

Interviews are scheduled under a "three-tiered priority system": 1) first priority is given to applicants who were scheduled for an interview but had to reschedule, 2) second priority is given to applications that have been pending for 21 days or less and 3) third priority is to all other pending applications, with newer filings scheduled for interviews first as the system works backwards toward older filings. Applicants can purportedly request that expedited adjudication be considered on a case-by-case basis.

The government contends that from the time it returned to the LIFO policy in early 2018 until 2021, the rate of backlog increase declined (while the total backlog itself continued to grow). That slowdown is no more. The government reports that in FY 2022, it received 221,000 new affirmative asylum applications representing a 350% increase over the prior year.

Plaintiff is a Turkish national and an active member of the "Gulen" or "Hizmet" movement. That movement is an "Islamic transnational religious and social movement" that originated in Turkey in the 1960s. It was aligned with the ruling Turkish Justice and Development Party until 2011, at which time disagreements emerged and, in 2016, the Turkish President blamed Hizmet for a failed coup. Numerous Hizmet followers were arrested and suspended from various teaching and military positions.

Following the 2016 coup attempt, plaintiff alleges that his company in Turkey was seized, his bank account was frozen and a warrant was issued for his arrest. He emigrated to the United States in June, 2018 on a B-2 visitor visa which he later converted to an E-1 treaty trader visa. In 2019, his wife and three children also emigrated to the U.S. on E-1 treaty trader visas.

In 2020, plaintiff filed an application for asylum with USCIS and shortly thereafter, completed the required biometrics.

4

As of the filing of the instant complaint, three and one-half years later, he has not, however, been scheduled for an interview while the pending asylum backlog has grown to over 900,000 applications. Plaintiff now seeks injunctive relief to obtain an interview in the near-term future.

## II. Motion to Dismiss

### A. Legal Standard

Defendants move to dismiss based on both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). To survive a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), plaintiff bears the burden of establishing that the Court has jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). If defendant mounts a "sufficiency challenge", the court will assess the sufficiency of plaintiff's jurisdictional allegations by construing the complaint liberally, treating all well-pled facts as true and drawing all reasonable inferences in plaintiff's favor. Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

If, however, defendants advance a "factual challenge" by controverting the accuracy, rather than the sufficiency, of the alleged jurisdictional facts, "plaintiff's jurisdictional averments are entitled to no presumptive weight" and the Court will consider the allegations by both parties and resolve the factual disputes. Id. The court has "broad authority" in

5

conducting the inquiry and can consider extrinsic evidence in determining its own jurisdiction. Id. at 363-64.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw a reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering such a determination, a court may consider certain categories of documents extrinsic to the complaint "without converting a motion to dismiss into a motion for summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). For instance, a court may consider documents of undisputed authenticity, official public records, documents central to a plaintiff's claim and documents that were sufficiently referred to in the complaint. Watterson, 987 F.2d at 3.

A court may not disregard properly pled factual allegations in the complaint even if actual proof of those facts is

improbable. Ocasio-Hernandez, 640 F.3d at 12. Rather, the court's inquiry must focus on the reasonableness of the inference of liability that plaintiff is asking the court to draw. Id. at 13.

### B. Analysis

Defendants contend that this Court lacks subject matter jurisdiction to issue a writ of mandamus and that on the merits, plaintiff fails to state viable claims under the Administrative Procedures Act, 5 U.S.C. § 500 et seq. The Court will address each contention in turn.

#### 1. Writ of Mandamus

Plaintiff seeks a writ of mandamus under the Mandamus Act, 28 U.S.C. § 1361, to compel defendants to process his asylum application and, presumably, schedule an interview. A writ of mandamus is issued in only extraordinary circumstances in which: 1) the petitioner is clearly entitled to the writ, 2) there is no other adequate alternative remedy and 3) there is a clear duty on the part of the defendants to do the act in question. See Georges v. Quinn, 853 F.2d 994, 995 (1st Cir. 1988). Defendants contend that this Court lacks subject matter jurisdiction to issue the writ because plaintiff cannot establish any of those three elements.

The Court agrees that plaintiff lacks an indisputable right to relief. He asserts that the timetables for processing asylum

7

claims under 8 U.S.C. § 1158(d)(5) at a minimum, entitle him to have his asylum case adjudicated within a reasonable timeframe. The same subsection, however, contains an express disclaimer of any private right of action to enforce the procedural or substantive provisions of the statute against the United States. See 8 U.S.C. § 1158(d)(7). The Court can not imply a right to adjudicate asylum claims within a reasonable time where the statute unequivocally disavows private enforcement of the timetables. This Court joins "the chorus of other courts across the country" that have reached the same conclusion. Fangfang Xu v. Cissna, 434 F. Supp. 3d 43, 56 (S.D.N.Y. 2020); see also L.M. v. Johnson, 150 F. Supp. 3d 202, 209-11 (E.D.N.Y. 2015).

Because plaintiff lacks an indisputable right to relief, the Court need not consider the remaining defenses to the mandamus claim. That claim will be dismissed.

### 2. Administrative Procedure Act ("APA") Claims

Plaintiff also brings claims under the APA, challenging the last-in-first-out ("LIFO") policy for reviewing asylum applications both as arbitrary and capricious and as causing an unreasonable delay in his case in particular.

Under the APA, a court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). In Telecommunications Research & Action Center v. F.C.C., 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"), the Court of Appeals for the

8

District of Columbia Circuit set forth guidelines for determining when a delay of agency action is unreasonable under the APA. Other sessions of this Court have applied the so-called TRAC factors at the motion to dismiss stage to determine whether plaintiffs have sufficiently pled facts to support a claim of unreasonable delay. See Novack v. Miller, No. 23-CV-10635-AK, 2024 WL 1346430, at *5 (D. Mass. Mar. 29, 2024) (applying TRAC factors to evaluate unreasonable delay claim); Tang v. United States, No. CV 23-13187-RGS, 2024 WL 1836624, at *1 (D. Mass. Apr. 26, 2024) (same).

> The TRAC factors are as follows:
>
> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

TRAC, 750 F.2d at 80. The requirement of a "rule of reason" is "the most important factor" in evaluating a claim of unreasonable agency delay. In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008). Agency decision-making is governed by a rule of reason where the agency's policy has an

"identifiable rationale." Ctr. for Sci. in the Pub. Interest v. FDA, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

The LIFO policy has an identifiable rationale. The USCIS re-implemented the LIFO policy in 2018 to disincentivize meritless claims filed to gain temporary residency and work authorization. See Xu, 434 F. Supp. 3d at 53. The USCIS correctly predicted that the LIFO policy would, at least temporarily, help decrease the backlog of pending asylum cases. See Arabzada v. Donis, No. CV 23-655 (RC), 2024 WL 1175802, at *6 (D.D.C. Mar. 19, 2024).

Plaintiff objects to defendant's contention that LIFO has been effective at reducing meritless claims. The Court's determination that LIFO is a rule of reason is, however, based on the policy's rationale, not on its efficacy. See Ctr. for Sci., 74 F. Supp. 3d at 300 (requiring only that defendants provide a "rhyme or reason" for their policy and delay). Furthermore, there are other reasons, including those cited by defendants, such as the COVID-19 pandemic, humanitarian crises in Cuba and Venezuela and decreased congressional funding for FY2023 that have exacerbated the asylum backlog in recent years, independent of the LIFO policy.

Plaintiff has failed to plead facts that reject what courts across the nation have frequently concluded: the LIFO policy is governed by a rule of reason. See, e.g., Arabzada, 2024 WL

10

1175802, at *7; Zheng v. Garland, No. 22-CV-6039, 2024 WL 333090, at *6 (E.D.N.Y. Jan. 29, 2024); Zheng v. Mayorkas, No. 23-CV-02707, 2024 WL 130157, at *6 (N.D. Cal. Jan. 11, 2024); Xu, 434 F. Supp. 3d at 53 (S.D.N.Y. 2020).

   Plaintiff also finds limited support for his APA claim among the other TRAC factors.  With respect to the second factor, Congress has established a recommended schedule for the USCIS to process asylum applications.  The parties agree, however, that the statutory timetable is aspirational.  In the face of a torrential flow of asylum applications, it is impractical to compel USCIS to meet the statutory asylum processing schedule in every case.  As plaintiff notes, the Asylum Division within USCIS has faced an enormous caseload, regardless of whether it utilizes a LIFO or FIFO scheduling system.  The backlog of asylum cases is an administrative policy issue properly resolved by USCIS and Congress.

   While human health and welfare is certainly at stake (Factor 3) and plaintiff's interests in stability and security are prejudiced by the delay (Factor 5), plaintiff fails to show how he is uniquely harmed by it.  He has a strong interest in an expedited process but he has not alleged any facts that persuade the Court that his interests are greater than those of any other asylee waiting to be processed. See V.U.C. v. USCIS, 557 F. Supp. 3d 218, 223 (D. Mass. 2021) ("[W]hile plaintiffs' welfare

11

interests are weighty (TRAC factors three and five), they are no more so than those of all U-visa petitioners awaiting waitlist adjudication."). Furthermore, the complaint does not allege that plaintiff or his family have been unable to obtain work authorization. See also 8 C.F.R. § 208.7 (enabling individuals with pending asylee status to apply for work authorization; Lajin v. Radel, 2019 WL 3388363, at *4 (S.D. Ca. Jul. 26, 2019). Judicial intervention would also interfere with USCIS's administration of an overloaded asylum processing system (Factor 4).

While the Court acknowledges the difficulties posed by plaintiff's pending status, he has failed to allege facts that set him apart from the hundreds of thousands of other asylum seekers. That a delay is excruciatingly long is not sufficient to demonstrate that the agency has acted in an unreasonable manner. See Anversa v. Partners Healthcare Sys., Inc., 835 F.3d 167, 179 (1st Cir. 2016) ("The duration of administrative proceedings, without more, cannot suffice to demonstrate that an agency's actions are unreasonable.").

The current processing of asylum applications employed by USCIS is governed by a rule of reason. While other TRAC factors may tilt toward plaintiff, a ruling in his favor would simply place plaintiff at the front of the queue without fixing the larger problem. See In re Barr Labs., Inc., 930 F.2d 72, 75

(D.C. Cir. 1991) (denying mandamus, even though all other TRAC factors favored it, where "a judicial order putting [petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain."); Xu, 434 F. Supp. at 55 (relief would "do nothing to cure the deficiencies of the asylum application process."). To allow plaintiff's request for a judicial remedy would be arbitrary and would incentivize and reward litigation that may further complicate USCIS efforts to resolve the asylum backlog.

Finally, plaintiff asserts that the government has not specifically responded to his general challenge to the LIFO policy as arbitrary and capricious. The Court, however, agrees with the government that, in the absence of final agency action, the arbitrary and capricious analysis "essentially overlaps with [plaintiff's] unreasonable delay claim." Arabzada, 2024 WL 1175802 at * 10; see also Tate v. Pompeo, 513 F. Supp. 3d 132, 148 n.8 (D.D.C. 2021) ("Plaintiffs' challenges to the prioritization of visa processing ... are best viewed through the lens of unreasonable delay.").

Accordingly, defendants' motion to dismiss claims brought under the APA will be allowed.

**ORDER**

For the foregoing reasons, the motion of defendants, Alejandro Mayorkas, Ur Mendoza Jaddou and Meghann Boyle in their official capacities to dismiss plaintiff's claims (Docket No. 10) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  August 9, 2024